Yes, Your Honors. You may proceed. Good morning. Good morning. May it please the Court. Your Honors, we're here on a very interesting matter regarding the manner in which a preliminary injunction may or may not proceed depending on whether or not the contractual language between the parties is one which warrants or does not warrant a preliminary injunction. Typically in a case in which a party seeks a preliminary injunction in the Eighth Circuit, what's appropriate is to go through the four elements of substantial likelihood of success on the merits, irreparable harm, balancing of hardships, and public interest. However, in order to do that, the Court is well aware that what you have to do is undertake a merits analysis. However, all that changes if in fact there is an arbitration provision. If in fact there is an arbitration provision, the Federal Arbitration Act governs and in fact requires that the merits analysis be undertaken only by the arbitration panel. In fact, the arbitration panel has the right, as it does in the agreement between Medicine Shop and the defendant, Mr. Senkbeil, has the right to in fact impose specific performance or provide for injunctive relief. What happened in this case is very interesting because what happened here is that the Court, when you have a situation  discusses providing injunctive relief, the Court has to determine whether or not there is a qualified contractual language that in fact permits the injunction to be granted without getting into any analysis regarding the merits. If in fact there is a requirement to go into an analysis of the merits pursuant to the data phase case, you find yourself in a situation where you're trumping the FAA requirement of having the arbitrator make the merits decision. What is interesting about the case that was handled below by Judge Jackson is that she actually undertook a hybrid. When you have a qualified contractual language provision under the Eighth Circuit, whether it be in the Mannion v. Nagin case, which Judge Murphy is very familiar with, and Judge Wolman in the Peabody v. Colesales v. Tampa Electric case, which you analyze this particular issue, as well as the more recent cases such as the Manhattan v. Group Automobiles case where they did a complete analysis of how there's an interchange and a reconciliation, if you may, as to when you find qualifying contractual language and you don't, you find that all you have to do is simply determine that there is qualifying contractual language. If there is, you cannot even conduct a hearing because if you conduct an evidentiary hearing, it's to establish the data phase elements. The only way you can establish the data phase elements is by getting into the merits. In this situation where you have a franchise or a franchisee contract, don't you have to look at all the provisions in the contract? Absolutely, and when you look at all the provisions in this particular contract, we focus with regard to the provision that Judge Jackson focused on. You see, Judge Jackson actually made a determination that there was qualifying contractual language. When she did so, she relied on paragraph F, page 23 of the license agreement, which specifically says, and this is where the issue became interesting. If you look at her opinion in her ruling, page 112, lines 10 through 14, she said, I find that there's qualifying language that the parties agree that either of us have such the right for a TRO or preliminary injunction pending a final determination of the merits of the dispute in arbitration. All you have to do is take her ruling and the exact words and juxtapose those with the precise language of the agreement. When you look at paragraph 14F, she left out two very important words. The two important words she left was may and the most important one was if warranted. When you have language such as may, it means the court is not compelled. Isn't a more natural reading of that is that the if warranted is referring to the prior sentence's reference to irreparable loss or damages? I don't believe so. I think that the if warranted determines whether or not you have the injunction that would be issued. In order to be able to determine if an injunction is warranted, I think that if warranted qualifies the obtaining of a temporary restraining order or injunctive relief. I don't believe the if warranted goes to the issue of damages. The prior sentence says you can get one as long as there's threatened or actual conduct that would cause us or you irreparable loss or damages. What's wrong with that reading? I believe that that requires a question of fact analysis on the merits. In fact, if irreparable loss or damages requires a merits determination? To determine or not whether the losses are irreparable or not? Absolutely. I think you have to determine whether or not if you have a loss, it may not be irreparable. If you have an adequate remediate law and it's repaired by money damages, then you don't satisfy the injunction element as to no adequate remediate law. I understand that, but is that a merits determination?  Well, I think you can make a determination about whether the potential loss is irreparable without determining the merits of the case. Maybe I'm wrong, but if you can point me to a case, I'm happy to look at it. The basis for Judge Jackson's finding of irreparable harm was focused primarily, if you look at the ruling, as to the fact that not granting an injunction would have a spillover effect on other franchises in the system, that they may proceed to go ahead and file injunctions. I know you contest the underlying determination, but the question is, is that a merits determination? In my view, I believe it is a merits evaluation. But, Your Honors, the problem here arises from the fact that if Judge Jackson makes a finding that there's a qualifying contractual provision, there should have never been any hearing at all on the evidence. There should have never been a live witness testifying as to whether or not there was substantial likelihood of success on the merits. The judge made a finding that there was substantial likelihood of success on the merits based on the fact that there was a dispute between the parties. In her ruling, if there's a dispute between one party and the other, that in and of itself gives rise to substantial likelihood of success on the merits. Well, if that's the case, then that element never can be lost because there's always a dispute. That's why you're in court. You are automatically satisfied in that regard. Then, when you get into the issue of the irreparable harm and there's no adequate remedy of loss, she went through an analysis. Interestingly enough, her basis, like I said, for the irreparable harm was, well, what's going to happen to this franchise system if other franchisees choose to take the action? Well, under the Peer Tech case, which was a case that was back in 2006, the court said the court cannot take into account the speculative nature of what may happen with another individual that may follow suit on any judicial precedent set in a case. That's up to that individual and that court. The outcome may be speculative. If, in fact, someone follows suit and if, in fact, they do so and it violates the contract, it's at their peril. She put a tremendous amount of time into what other franchisees would or would not do. That would be inappropriate. Here, if we go back to the decision in Mannion v. Nagin and Peabody v. Coal Sales, as well as in the McGladrey case, especially the Manhattan case, there's a complete analysis as to when it's appropriate to have a merits analysis or not and when it's appropriate to find a qualifying contractual language or not. You can't fit a square peg in a round hole. There is no reason at all to have an evidentiary hearing when you have made a finding that is qualifying contractual language. You can't do the two because you cannot get into the data phase analysis as to the four elements of a preliminary injunction without, in fact, getting into the merits. That is how you determine the data phase elements. She did that. She went ahead and treated the non-qualifying contractual injunction because she knew there's language that said if warranted, if necessary, may because she recognized that, but I think she wanted to find a conclusion that in her view was going to address the issues to what the other franchisees were going to do. That is inappropriate and that is violative of this provision. Secondly, for the judge to require that a franchisee get a mandatory injunction to go ahead and continue to perform in a relationship between the parties on a contract that is deemed as a matter of law to be a personal services contract, and for that we cited the Dunkin' Donuts v. Minerva case out of the 11th Circuit and many other cases that deal with that precise issue. This is a pharmacist, like a doctor. A doctor, it's undeniably our personal services contracts and this is a pharmacist and this The contract requires a pharmacist. I understand that, but it doesn't require any specific pharmacist, does it? Oh, yes, it does, especially in a franchise. In a franchise, you are actually agreeing that you will exercise your best effort, you will fully perform, and in fact, we are selling the franchise to you as an individual. That's why it's a personal services contract. Maybe I'm mistaken. I thought it was to a corporation. It doesn't matter. You can have a personal services contract that is not to a corporation. Does the contract say that Mr. Sankfield has to be the pharmacist? 100 percent, and that Mr. Sankfield has signed a personal guarantee where he commits to performing all of the obligations of the contract. That personal guarantee gives him the personal obligation to perform. Clearly, this is a personal services contract. I have four minutes left and I'd like to be able to reserve. Thank you. We'll hear from the appellee. Mr. O'Brien, good morning. You may proceed. Good morning. May it please the court. The overarching question here, in your mind, should be who is supporting the arbitration process? Who is trying to preserve the arbitration process to make it meaningful and not a hollow formality? That was the reason Medicine Shop sought a preliminary injunction to prevent irreparable harm so that the arbitration process could carry out its normal course and that the issues of breach that appellants were raising could be addressed. Judge Jackson did not address the merits of the case at all. She was steadfast in refusing to address the merits of the case. Indeed, both parties objected to any evidence of merits coming in, and yet later in the two on cross-examination were trying to reach the merits of the case and then tried to put on an affirmative witness going into the merits of the case and Judge Jackson refused to hear the evidence. A proffer of evidence was made, but Judge Jackson refused to hear any evidence on the merits of the case. The issue here, as far as the preliminary injunction and the standard, is whether Judge Jackson abused her discretion in issuing the temporary the preliminary injunction. Judge Jackson, as Mr. Zarco even indicates, found that there was qualifying contractual language. That's findings of fact consistent with Eighth Circuit precedent, and that's reviewed by this court under clear error. And as long as she had a road map for finding qualifying contractual language, this court should affirm her decision because she did not abuse her discretion. Excuse me. Whether or not it's qualifying contractual language is a fact question? I think what the qualifying contractual language is, is a fact question. That there needs to be qualifying contractual language. Whether or not the particular language of this contract is qualifying, is that a fact question or a legal question? Well, I think it's a mixed question, but there is a legal determination to be made under the Peabody and Mannion decisions, but what the language is and whether it's sufficient to be qualifying contractual language, I think are fact questions that the court can decide. Whether it's sufficient to be qualified? Do you have a case that says that? No. What the facts actually are, are fact issues. But interpretation typically is. Interpretations are legal issues. That's fair enough. Whether it qualifies seems to me to be a legal question. Let's look at what she is suggesting. Let me first address the arbitration issue and the overarching issue here of the risks between the parties as to what Judge Jackson was trying to preserve. For the arbitration process, we have a risk to the appellants that Medicine Shop is in breach and that they have to continue operating with Medicine Shop signage when they're not happy otherwise operating with such signage. And that it's somehow unfair to them to continue operating. An issue for the merits and for the arbitrator. But on a $1,000 bond and with no complaints for the last 11 months and no further determinations by the court, no going back to the court to determine whether personal service issues have been implicated in any way, no relief sought from this court, the injunction has been complied with immediately. On the flip side, the risk to Medicine Shop is of one firm showing many other firms how to leave the system and how to gut Medicine Shop's system and how up to 10% of Medicine Shop's franchise system could be gone before the arbitration process even starts. And then the parties are arguing over breach of contract with Medicine Shop having a franchise system that is far less and with far less integrity than it would have going in. That's the status quo that Judge Jackson is trying to strike balance. Did Medicine Shop change some of the terms? Did that sort of precipitate the division? I'm sorry? Didn't Medicine Shop change some of the terms, the contractual terms? The contract has stayed the same since the party signed it in 95. So the provisions haven't changed any. Or I'm misunderstanding your question, Judge Murphy. Well, I thought that they had a new interpretation of some of it. I don't believe so. The qualifying contractual language that Judge Jackson found is consistent with what Judge Grunder was asking Mr. Zarco, that either party may obtain an injunctive relief seeking irreparable harm. There's no mention of likelihood of success on the merits at all. The provision talks about... Let's talk about that for a second. You're reading the if warranted to modify the irreparable loss on damages. Absolutely. Correct. What about it goes on to say pending a final determination on the merits. I think that's exactly consistent. Well, let me ask a question first. Does that suggest that the court make a preliminary determination on the merits? I don't think so. What if warranted means to me is consistent with what your suggestion that the case has to be consistent with the law. I was focusing on the next phrase. Pending a final determination on the merits. What about that? Right. R.S.M. Magladry, the district court in Minnesota, determined that that identical language or very similar language is the... We all understand the Mannion and the Peabody opinions here. We're leaving the merits for arbitration and only if you can find a way to grant this injunction without getting into the merits can it be granted under Eighth Circuit law. And the if warranted language getting back to that as I think a more natural reading of the provision is suggests that if warranted means that the injunction has to be consistent with law. Consistent with Eighth Circuit law. Consistent with that irreparable harm provision as you suggest. But the second point that gets you qualified language is the further language within that same provision that Judge Jackson pointed out that Medicine Shop may obtain an injunction to ensure the operation of your pharmacy as a Medicine Shop pharmacy. The parties bargain for this... You stop there. Sure. It then says pursuant to the terms of the agreement. Correct. Does that require a merits determination? I don't believe so. In fact, Judge Jackson didn't look to any other provisions besides the arbitration provision and the injunction provision to make this issue. The merits issues that are before the arbitrator are about myriad other breaches that had nothing to do with these provisions. And I think the court can look to the arbitration of the injunction provision to grant a preliminary injunctive relief when that's what the parties suggested. And frankly I think that's the big distinction between this case and the Mannion case or even the Manhattan case. Where in Mannion the injunction that was sought and as Judge Murphy's opinion states, the injunction that was sought went to the ultimate rest. The party was asking for a determination by the court about an anniversary date and was trying to seek benefits and trying to get an injunction to reinstate benefits. Those were the core issues that were going to be arbitrated. The core issues of this case have nothing to do with the injunction provision or the arbitration provision or whether Medicine Shop is entitled to have signage up while the parties arbitrate the case. Judge Jackson only had to look at this injunction provision alone and that provision is not implicated in the arbitration action at all. And so there is absolutely no overlap between the fact issues or the merits issues that the arbitrator would be deciding and the injunction issue as to whether the court should issue an injunction in this case. No overlap at all. And I think the proof of the pudding is in the tasting. Judge Jackson didn't get into the merits of the underlying arbitration at all. How does the court determine if it's warranted? What finding did she have to make? I don't think she made any finding there other than this is again an interpretation question so perhaps this is a legal interpretation but the if warranted language doesn't say if you find on the merits. That's appellant's reading of the provision. Well it must mean something. Well it does. I think it means that the injunction has to be consistent with the law. It has to be consistent with what the Eighth Circuit has said the law is on injunctions. If the court can't grant an injunction based upon what the law is, the injunction isn't warranted. Okay well their argument is the law is the data phase factors and one of the data phase factors is the merits. Correct. And I think the qualifying contractual language that Peabody and Mannion have set, the footnote 7 in Peabody suggests that the data phase factors are disregarded entirely and that this becomes an issue of arbitration. Other circuits still look to the factors in some sense. I think whether the Eighth Circuit wants to go that route or not, I think a way to get there is consistent with many of the other circuits is to say that the only issue before Judge Jackson is to determine that there's a valid or substantial factual dispute between the parties that needs to go to arbitration. Is there a valid arbitrable issue here? Finding that there is a success on the merits prong established. Likelihood or irreparable harm then comes down to can we preserve the status quo? Can we, consistent with other Eighth Circuit cases, namely the labor union cases, not exactly on point because we've got a statutory injunction but we still have arbitration provisions there, can we keep the arbitration process meaningful? Can we keep this from being a hollow formality? And so the irreparable harm issue comes down to preserving the arbitration process. And that gets to where I started today, where do the interests lie here? How do we preserve the arbitration process? Appellants while they claim that they might be injured here have established no evidence in the record and there is no harm to them. They've gone a year under this injunction with medicine shops banners up without having any problem. The risk on medicine shop sign though is that before the arbitration starts 40 to 50 franchisees will not be in the system anymore and there's no way to put Humpty Dumpty back together. And we'll be arbitrating the issues of breach but with a much smaller franchise system. Does the contract require Mr. Sankbeil to serve as the pharmacist? It does not. He's the franchisee. He assigned his corporation or he assigned his franchise interest to a corporation, that's Exhibit 2. He can hire whoever he wants to do the duties. There is no obligation that he be the pharmacist and perform those services. He has to fulfill his obligations as for the corporation DDI has to fulfill its operations as the franchisee but he does not have to operate as the pharmacist. And here for personal services let me just take the court back perhaps to law school and 1852 and the Lumley v. Wagner case that we perhaps read in law school where you've got the Prussian opera singer Johanna Wagner who wants to sing for the Queen of London but then decides that she'd rather sing for the Italian opera. And so the issue which the court said we don't want to get mired down into these issues about her singing and her abilities and we're not going to force her to sing. But the court even there said if she's going to sing she has to sing for her Majesty's opera in London. She can't breach her contract and go sing for Italy. And so the issue is simply what Medicine Shop is asking here. It's not an issue about whether Mr. Sinkbill and DDI have to operate a pharmacy. If they want to go out of business that's a whole different issue. But they want to operate a pharmacy. And the issue is if you're going to operate a pharmacy you have to operate that pharmacy for her Majesty's opera Medicine Shop. You can't operate under the Italian opera pharmacy. Even there the court determined that it's not a personal service issue to the extent of enforcing the law. We're not going to get mired down into how she sings and her personal services but we are going to join her and make her sing if she's going to sing for the London opera. The court found substantial irreparable harm or significant risk of irreparable harm here which would damage the arbitration process. Questions that Judge Grunder that you asked is this a merits determination? I think the answer is no. Likelihood of success on the merits is a separate prong from irreparable harm. They're two separate prongs. And in this case can you have irreparable harm without getting into the merits of the case? Yes. The merits of the case that Judge Jackson refused to hear is a case about whether Medicine Shop breached its obligations under the franchise agreement. The irreparable harm is an issue about what happens if this injunction is granted or this injunction is not granted. It has nothing to do with the breach issues that were being that will be addressed in the arbitration. And in fact if the injunction as it's been in place for the last 11 months has been preserving and preventing the irreparable harm there's no issue of those damages to even be presented to the arbitrator. The arbitrator is not going to hear issues about irreparable harm because the flag has been flying. The Medicine Shop signage has been up. And so that is not even an issue that would ever get presented to the arbitrator. And so they can be divorced. They were divorced. They are two entirely separate issues. Thank you. Mr. Zarko. Yes, Your Honor. Thank you very much. I'm going to try to address each one of the points that was presented by counsel. First of all, Judge Gruen, you're 100% correct. The determination as to whether or not there's a qualifying contractual provision in an arbitration clause pertaining to an injunction is a legal question. It's undeniable. It's throughout all the cases that we've cited previously. And as such, there is simply no hearing required. The mere fact that there was a hearing was done for no reason other than to make a factual determination as to the merits. And that's exactly what was done. If Your Honors would read the transcript clearly, which I'm sure you have, you will see that at certain points the judge and I are actually disputing as to whether or not she and I agree on certain facts. There's no basis for that. There's no room for that in a situation like this. Second of all, the issue as to whether or not there's irreparable harm is a question of fact. Whether or not there's irreparable harm under the data phase case and the other cases specifically say that you must do an analysis of the facts of the merits. Furthermore, Judge Murphy did not make the determination as to the irreparable harm wrong. She said that there was no adequate remedy at law, and we maintain there was an adequate remedy at law because of the fact that the damages were quantified. In response, Judge Murphy, to your concern as to whether or not the franchise agreements changed, let me explain. The particular franchise agreement with Mr. Sankville did not change. The franchise agreements for the new franchisees coming in changed dramatically. It changed to the point that all of the services that were previously being required by the franchisor to be provided to the franchisee, Mr. Sankville, had been eliminated. That bundle of rights that the franchisee, Mr. Sankville, had to receive all the training and the service support and assistance and the advertising and marketing program were all eliminated as Mr. Fiacco testified in an evidentiary hearing in an injunction that should have never taken place. So as a result of that admission, it was determined by my client that simply there's a determination of the franchise agreement that he has the right to carry on. The court found that our client did not have the right to terminate. That's a finding. That's a finding on the merits. That's a finding on the merits based on the contractual language. Inappropriate when you have a contractual qualifying contractual provision. Paragraph 14G of the arbitration provision specifically says, this agreement to arbitrate shall continue in full force and effect subsequent to and notwithstanding the expiration or termination of this agreement. And when you look at paragraph 13E, you will see it discusses about the franchisee having the right to terminate without cause, at which point if a franchisee terminates without cause, the covenant not to compete would go into place. But that implies that if there's a termination with cause, the covenant not to compete becomes a dependent covenant, which therefore excuses the franchisee from not being able to compete and allows the franchisee to compete. Clearly those two provisions, which specifically discuss the fact that the franchisee has the right to terminate and whether or not he does and therefore whether or not it's a proper termination or not a proper termination which would then give rise to determine whether or not there's an injunction, all of that is a merits analysis based on the facts and the circumstances. In fact, the judge says in her transcript, based on the circumstances, that means she did a merits analysis. And the fact that she and I discussed it with each other and did not agree concludes that there was a merits analysis. Once again, under what circumstances would injunctive relief be grantable under this agreement? Under this agreement, we would have to have a complete data phase analysis of all the elements. And she maintained that she was not going to conduct a merits analysis. So therefore, if she was not going to conduct a merits analysis How do you preserve the arbitration provision? The arbitration provision is preserved by the contract. The arbitration provision permits the arbitrator to have this injunction hearing. The whole point here is where does this injunction hearing take place? A district court would never grant an injunction under this contract? Under this contract, under these terms, it can only do so if the termination was not proper. And that requires a tremendous factual analysis. McDonalds v. Robertson, case out of the 11th Circuit and its progeny. These cases all say that in order to be able to have an injunction you have to be able to determine whether or not the termination was proper. That requires a whole evidentiary hearing. Thank you. You've answered my question. Thank you. The case is submitted and we will take it under consideration.